SNELLING AND SNELLING, INC., Appellee,

v.

ARICO, INC., et al., Appellants.

[Cite as *Snelling & Snelling, Inc. v. ARICO, Inc.* (1993), 83 Ohio App.3d 89.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–802.

Decided March 9, 1993.

*Vorys, Sater, Seymour & Pease, Thomas M. Taggart* and *William D. Kloss, Jr.,* for appellee.

*Robert N. Black, Jr. Co., L.P.A.,* and *Robert N. Black, Jr.,* for appellants.

---

WHITESIDE, Judge.

Defendants-appellants, ARICO, Inc. and its stockholders and principals, Gregory and Gail Johnson ("defendants"), appeal from a judgment from the Franklin County Court of Common Pleas, finding the defendants guilty of fraud, issuing a permanent injunction, and enforcing the agreement's covenant not to compete. Defendants raise five assignments of error as follows:

"1. The trial court erred in granting a temporary restraining order in favor of plaintiff.

"2. The trial court erred in granting preliminary and permanent injunction[s] in favor of plaintiff.

"3. The trial court erred in consolidating the hearing on permanent injunction with the hearing on preliminary injunction.

"4. The trail [*sic*] court erred in requiring defendant[s] to defend claims against them in a trail [*sic*] on the merits without notice when the trial court had previously ordered defendants to rid themselves. of all originals and copies of evidence which defendants would have used to defend themselves.

"5. The trial court erred in not granting defendants' motion for dissolution of temporary restraining order and dismissal of complaint."

Defendants operated several Snelling franchises pursuant to written license agreements with plaintiff-appellee, Snelling & Snelling, Inc. ("plaintiff"). On March 25, 1992, plaintiff filed a verified complaint for injunctive relief, seeking preliminary and permanent injunctions terminating the license agreements, an order enjoining defendants from operating a Snelling franchise, and an order enforcing the noncompetition clause in the agreement. Additionally, plaintiff sought a temporary restraining order[1] (1) to prevent defendants from operating a Snelling franchise, (2) to prevent defendants from using any Snelling identification, and (3) to require defendants to deliver all copies of business records to plaintiff which related to the Snelling franchise. The court issued the temporary restraining order on March 25, 1992, preventing defendants from operating any temporary or permanent employment services related to Snelling, and restraining them from using any Snelling name, service marks or logos. Additionally, the restraining order purported to grant affirmative relief requiring defendants:

" * * * to deliver to Snelling all copies of confidential system materials, assignment records (including all client orders, client information, job seeker applications, temporary employee's applications, and pay-in-full files), records of accounts receivable, and all other materials containing the proprietary marks, Snelling's other marks, or any variations or colorful imitations of Snelling's marks. * * * "

On March 26, 1992, plaintiff posted bond in the amount of $25,000, which was required by the order as security for the temporary restraining order. After the temporary restraining order had been granted, the case was referred to a referee solely for the preliminary injunction hearing, the order of reference stating the referral to be for "Preliminary injunction hearing (TRO having been granted)." On March 27, 30 and 31, 1992, contempt hearings were held before the referee despite there being no order of reference referring the contempt proceedings on the temporary restraining order to the referee. The referee recommended that defendants be found in contempt for refusing to return all the documents and business records as allegedly ordered in the temporary restraining order. The referee recommended that ARICO's president be held in jail until defendants fully complied with the court order. Without awaiting the filing of objections, the court adopted the referee's recommendation, found ARICO's president to be in contempt and ordered him to be held in jail until the defendants turned over all ARICO records to plaintiff and ceased conducting their business known as "Staff

---

1. The record is unclear as to whether the order was issued *ex parte* since there is no reference to the presence of defendants' counsel, and there is an affidavit by plaintiff's counsel to justify proceeding *ex parte*.

Force," even though the temporary restraining order had made no reference to "Staff Force," nor any other business of defendants except the Snelling franchise.[2]

Defendants filed a "Motion for Dissolution of Temporary Restraining Order and Dismissal of Complaint." On April 7, 1992, a hearing was held before the referee. The referee, despite the limited order of reference, consolidated the preliminary and permanent injunction hearings over the objection of defendants' counsel. A report was issued in which the referee recommended that the court grant plaintiff a permanent injunction enforcing the covenant not to compete. The court adopted the referee's report as its own finding, and a final judgment was entered on May 18, 1992, enjoining defendants from competing with plaintiff within a ten-mile radius of their former offices and using "Snelling proprietary materials enumerated in the temporary restraining order." That part of the temporary restraining order requiring defendants to turn the records and materials over to plaintiff was not made permanent.

On November 25, 1992, defendants filed a Chapter 7 bankruptcy petition. The automatic stay provision stays all actions against the debtor during the bankruptcy proceeding, but here the debtors are the appellants (defendants) who seek relief through the appeal. The automatic stay may stay any Snelling action but not the pursuit of an appeal by the debtors.[3]

In 1986, Gregory and Gail Johnson formed Grand Society Corporation, which entered into a franchise agreement with the plaintiff. Grand Society purchased a Snelling & Snelling franchise in Dayton and, subsequently, three more temporary personnel franchises and one permanent personnel franchise in the Columbus area. At the approximate time of expansion into the Columbus area, the Dayton office was sold, and Grand Society Corporation was reorganized into ARICO, which later assumed the franchise agreements. ARICO became the parent company and Pembco, J–Card, Aequus and Diversified Personnel Services were its subsidiaries.

In October 1991, defendants entered into a contract with plaintiff's subsidiary, Advance, Inc., for Advance to pay defendants' temporary employee payroll each week and perform administrative and accounting functions for defendants. In exchange, ARICO had all its receivables sent directly to Advance. The companies experienced problems with the accounting service and defendants did not

---

2. "Staff Force" was a temporary employee placement company formed after the Snelling & Snelling franchise was terminated. The Johnsons were employees of "Staff Force," and the trial court apparently found that "Staff Force" was simply a continuation of the Snelling & Snelling franchise business without the Snelling name.

3. There is no indication that the trustee in bankruptcy (if there be one) wishes to abandon the appeal.

receive their portion of the receivables or an accounting of such. Since such problems were occurring, plaintiff[4] agreed to loan money to defendants in order to meet their payroll. On March 21, 1992, defendants received plaintiff's accounting of the receivables remitted to plaintiff since October 1991. The accounting indicated that defendants owed plaintiff approximately $182,000. Defendants believed the amount owed was approximately $76,000. Representatives of plaintiff arrived at defendants' office on Tuesday, March 24, 1992. The accounting was adjusted to reflect that defendants owed an amount of $142,000 to plaintiff. Plaintiff then delivered written notice to defendants that the franchise agreements were terminated.

Plaintiff believes that defendants reported fraudulent financial information to Advance (apparently an alter ego of plaintiff) by submitting names of permanent employees to be paid as temporary employees, rather than only names of temporary employees. Additionally, plaintiff contends that defendants were operating a competing business called CareForce. CareForce is a temporary employee placement agency solely for medical personnel. Plaintiff terminated the franchise agreements because of these alleged violations of the agreements. Defendants contend that the termination of the franchise agreements was wrongful since the reporting of financial information concerning permanent employees was necessary because of the difficulties with Advance. Defendants argue that the Senior Vice–President and Chief Financial Officer of both Snelling & Snelling and Advance[5] agreed to "payrolling"[6] the employees until the Advance system was working properly. Additionally, defendants argue that CareForce is not a competing business with Snelling & Snelling since plaintiff supplies only clerical, office-oriented, and light industrial employees in this geographical area and does not supply temporary health care employees.

Defendants contend that the procedures regarding the temporary restraining order and the preliminary and permanent injunctions were mishandled, causing prejudice to the defendants. These procedural "problems" resulted in the

---

4. The record and the briefs submitted to this court are unclear as to whether Advance or Snelling & Snelling made the loans. Advance and Snelling & Snelling appear to be separate corporations since Advance is a subsidiary of Snelling & Snelling. The trial court and the parties have treated the two corporations as a single entity. Snelling has claimed it may terminate the franchise contract with ARICO based upon ARICO's financial reporting to Advance, which would be inappropriate to the extent Advance is a third party who is not a party to this suit. Snelling has not demonstrated any direct effect of this reporting upon itself, but all parties have treated the two corporations as one entity perhaps because they have interlocking officers.

5. The same person fulfills the offices of both corporations.

6. "Payrolling" is a term which means one company funds the payroll of another company's employees and then bills the company for reimbursement.

defendants' being unable to defend themselves against plaintiff's claims, thereby prejudicing defendants.

By the first assignment of error, defendants contend that the trial court erred in granting a temporary restraining order in favor of the plaintiff. Temporary restraining orders are provided for in R.C. 2727.02, which provides:

"A temporary order may be granted restraining an act when it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief, or any part of it, consists in restraining the commission or continuance of such act, the commission or continuance of which, during the litigation, would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, threatens or is about to do, or is procuring or permitting to be done, such act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual."

In this case, the trial court found that:

" * * * [I]mmediate and irreparable injury and damage will result to plaintiff if defendant, ARICO, Inc. is permitted to continue its operations of temporary and permanent employment services under the name of Snelling and Snelling, Inc. Further, defendant will irreparably harm plaintiff's business and plaintiff's business reputation if the records pertaining to the aforementioned entities are not provided to plaintiff and the related telephone numbers and advertisements transferred to plaintiff immediately. * * * "

The restraining order is an appropriate remedy to prevent defendants from operating temporary or permanent employment services under the Snelling name; however, it is an inappropriate remedy to recover possession of the business records and the telephone lines.[7] Restraining orders are designed to maintain the status quo by preventing a defendant's taking action adverse to the plaintiff, but are not designed as a means for plaintiff to recover possession of personal property. A more appropriate order which could have been utilized to recover possession of the business records is a replevin action pursuant to R.C. Chapter 2737. R.C. 2737.02 provides that "[t]he possession of specific personal property may be recovered in a civil action prior to the entry of judgment * * *." R.C. 2737.10 provides that "[a]n order of possession issued by a court shall not be effective until the movant files with the court a bond to the respondent, executed by the movant's surety, in an amount twice the approximate value of the property described in the order * * *." Additionally, R.C. 2737.11 provides:

---

7. Although we are reversing the injunction and the temporary restraining order to the extent issued, a limited temporary restraining order might not be inappropriate to restrain the defendants from using the Snelling name, records and equipment to prevent irreparable harm to plaintiff's reputation.

"The respondent may recover property taken pursuant to an order of possession of which the property is the subject by filing with the court a bond to the movant, executed by the respondent's surety in the same amount as the bond filed by the movant pursuant to section 2737.10 of the Revised Code * * *."

R.C. Chapter 2737 allows a movant to post a bond for twice the value of the personal property and take possession. This chapter also allows the respondent to regain or reclaim the property upon posting his own bond in a like amount. In that way, if the respondent posts a bond, he is able to keep possession of the property and, in this case, could have used it to defend himself in the later proceeding.

The temporary restraining order prevented defendants from being able to use R.C. 2737.11 and post a bond to keep possession of the property. Here, the defendants were unable to keep or to recover the items without being subject to contempt of court proceedings. Thus, the order improperly prevented defendants from being able to defend themselves since they were denied access to the necessary records and documents pertinent to the issues.

Additionally, the temporary restraining order was used inappropriately as a temporary mandatory injunction. A temporary restraining order is an interim remedy to prevent or restrain a party from doing something adverse to the plaintiff during pendency of the action for which there is no adequate legal remedy. A mandatory injunction requires an affirmative act and is similar to mandamus, except it requires a private party rather than a public officer to take action to which the plaintiff is legally entitled. In this case, plaintiff sought a temporary restraining order not only to prevent defendants from operating as a Snelling franchise but, also, to require mandatory, affirmative acts of defendants, including requiring the return of the business records and transferring the telephone lines. The mandatory "temporary" restraining order is not an appropriate remedy. *Whitehall ex rel. Salyer v. Whitehall* (July 27, 1976), Franklin App. No. 76AP–471. Seldom, if ever, is a temporary (or preliminary) mandatory injunction an appropriate remedy. However, even when, if ever, appropriate, "a temporary mandatory injunction" should not be issued without a preliminary-injunction-type hearing.

These procedural errors prejudiced defendants. By requiring them to turn all the business records over to plaintiff, under threat of being jailed for contempt, defendants were precluded from using the records to defend themselves at the hearing. This order effectively determined the possessory issues without an opportunity for an adversarial hearing. Therefore, defendants' first assignment of error is well taken.

The second, third and fourth assignments of error are related and will be discussed together. Defendants contend that the preliminary and permanent

injunction hearings should not have been consolidated into one hearing, without notice, requiring defendants to defend themselves without evidence which they could have used in their defense. They also contend that the injunction should not have been granted.

■ Initially, the referee acted outside the authority given to her since the order of reference did not refer the entire case to her. The order of reference referred the case to the referee only for the preliminary injunction hearing. The referee consolidated the preliminary injunction hearing with the permanent injunction hearing after earlier having conducted hearings on the unreferred contempt proceedings. The referee had no authority to conduct the permanent injunction hearing since the order of reference gave no such authority. Although the trial court may consolidate the preliminary injunction hearing with the merit hearing upon the issue of a permanent injunction, here the trial court did not consolidate the hearings but, instead, made a limited referral for the referee to conduct only the hearing on the preliminary injunction motion. Such a limited referral to a referee does not confer general powers for the referee to hear the entire case, including the trial on the merits. The referee exceeded the power conferred by the reference order by proceeding to a trial on the merits over defendants' objection.

Referees are given their powers pursuant to Civ.R. 53(C). This provision provides:

"The order of reference to a referee may do all of the following:

"(1) Specify or limit the referee's powers;

"(2) Direct the referee to report only upon particular issues, do or perform particular acts, or to receive and report evidence only;

"(3) Fix the time and place for beginning and closing the hearings and for the filing of the referee's report.

"Subject to the specifications and limitations stated in the order, the referee shall exercise the power to regulate all proceedings in every hearing before the referee as if by the court and to do all acts and take all measures necessary or proper for the efficient performance of the referee's duties under the order. * * * "

This provision allows the court to refer an entire case to a referee in order to give a report to the court, or the court may limit the referee's powers and direct the referee to report only on a particular issue or perform a specific act. This case involves an order in which the court specified that the referee should conduct only the preliminary injunction hearing. The order limited the powers of the referee by specifying a particular act. The court did not change the order of reference nor create another order, so the referee exceeded the authority that

was given to her by consolidating the preliminary and permanent injunction hearings. She did not have the authority to conduct the permanent injunction hearing since the order of reference did not confer such authority.

Moreover, not only did the referee exceed her authority by consolidating the hearings, but by doing so the defendants were not given prior notice and were unable fully to defend themselves since crucial evidence had been removed from their possession. Defendants had no actual or constructive notice of the trial on the merits in this case. The Civil Rules normally provide notice that the trial court may consolidate the hearings pursuant to Civ.R. 65(B).[8] However, this case was tried before a referee instead of a trial court judge. Where the order of reference limits the referee to the preliminary injunction hearings, defendants do not have actual or constructive notice that the trial may be on the merits. In this case, the referee did not have the authority, and the defendants were not provided with notice that the hearing and trial might be consolidated. Consequently, defendants' second, third and fourth assignments of error are well taken.

By their fifth assignment of error, defendants contend that the trial court erred in not granting defendants' motion for dissolution of the temporary restraining order and dismissal of the complaint. Since the complaint stated a claim for relief, it properly was not dismissed. However, for the reasons stated above with respect to the first assignment of error, the trial court erred in overruling defendants' motion for dissolution of temporary restraining order since the temporary restraining order was an inappropriate remedy for reclaiming the business documents. Therefore, defendants' fifth assignment of error is overruled in part and sustained in part.

For the foregoing reasons and to the extent indicated, the first, second, third and fourth assignments of error are sustained, the fifth assignment of error is sustained in part and overruled in part, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law, consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BOWMAN and TYACK, JJ., concur.

---

8. Civ.R. 65(B)(2) provides: "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application. * * *"