Fred DEVER, et al., Plaintiffs,

v.

Hon. Gene KELLY, Sheriff,
et al., Defendants.

No. 3:06–CV–392.

United States District Court,
S.D. Ohio,
Western Division at Dayton.

July 2, 2008.

Daniel C. Harkins, Mark De Castro, Harkins & Associates, Mark D. Decastro, Springfield, OH, for Plaintiffs.

Mark David Landes, Brandi L. Dorgan, Isaac Brant Ledman & Teetor, Columbus, OH, for Defendants.

Glenn Clark Xenia, OH, pro se.

## ENTRY AND ORDER ADOPTING THE REPORT AND RECOMMENDATIONS OF THE UNITED STATES MAGISTRATE JUDGE (DOC. 81) AND SUPPLEMENTAL REPORT AND RECOMMENDATIONS (DOC. 83), GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS SHERIFF KELLY, AND DEPUTIES CRAMBLETT, TILLMAN AND REED (DOC. 51) AND DENYING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 37) AND DISMISSING WITH PREJUDICE THE CLAIMS AGAINST MR. CLARK.

THOMAS M. ROSE, District Judge.

As required by 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b), the District Judge has made a *de novo* review of the record in this case. Upon said review, the Court finds that Plaintiff's objections (Docs. 82 & 84) to the Magistrate Judge's Report and Recommendations (Doc. 81) and Supplemental Report and Recommendations (Doc. 83) are not well taken and they are hereby **OVER-RULED.** Accordingly, the Court **GRANTS** Motion for Summary Judgment of Defendants Sheriff Kelly, and Deputies Cramblett, Tillman and Reed (Doc. 51) and **DENIES** Plaintiffs' Motion for Partial Summary Judgement (Doc. 37) and, as recommended by the magistrate, **DISMISSES WITH PREJUDICE** the Claims Against Mr. Clark. The captioned cause is hereby **TERMINATED** upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

**DONE** and **ORDERED.**

## REPORT AND RECOMMENDATIONS ON THE PARTIES' MOTIONS FOR SUMMARY JUDGMENT

MICHAEL R. MERZ, United States Chief Magistrate Judge.

This case is before the Court on Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 37) which Defendants Kelly, Cramblett, Tillman, and Reed oppose (Doc. No. 52); Plaintiffs have filed a Reply Memorandum in support (Doc. No. 54). Defendant Glenn Clark, who is now proceeding *pro se*, has not opposed the Motion. The case is also before the Court on Motion for Summary Judgment of Defendants Sheriff Kelly, and Deputies Cramblett, Tillman, and Reed (Doc. No. 51). Plaintiffs oppose that Motion (Doc. No. 55) and the moving Defendants have filed a Reply in support (Doc. No. 80).

Although the order of general reference in this case embodied in the Preliminary Pretrial Order (Doc. No. 12) expired with the discovery cut-off on December 14, 2007, these two Motions have been specially referred (Doc. Nos. 48, 56).[1]

## The Complaint

Plaintiffs Fred and Bobbie Dever and American Powder Coating and Manufacturing, Inc., brought this action against Defendant Gene Kelly, the Sheriff of Clark County, Ohio, and his Deputies, Sergeant Terry Reed, Deputy Dustin Cramblett, and Deputy Bradley Tillman (collectively, the "Clark County Defendants"), and Mr. Glenn Clark under 42 U.S.C. § 1983 and Ohio common law (Complaint, Doc. No. 2). Subject matter jurisdiction is premised on 28 U.S.C. §§ 1343(a)(3) and 1367, is not contested, and is appropriate.

Count One of the Complaint alleges that Defendants unlawfully searched Plaintiffs' business property and seized both the real estate and some personal property in violation of the Fourth Amendment to the United States Constitution (Complaint, Doc. No. 2, at ¶ 36). The same acts by Defendants are alleged to have deprived Plaintiffs of their substantive and procedural due process rights in violation of the Fourteenth Amendment. *Id.* at ¶¶ 37–38. Count Two re-avers violation of Plaintiffs' Fourth Amendment rights. *Id.* at ¶¶ 42–45. Count Three re-avers deprivation of procedural due process rights. *Id.* at ¶¶ 47–51. Count Four avers that the unlawful search and seizure resulted in a deprivation of Plaintiffs' substantive due process right to privacy. Count Five appears intended to allege a common law

count of trespass and that Ohio Revised Code § 2744.02 is unconstitutional under the Ohio Constitution. *Id.* at ¶¶ 58–64. Count Six purports to state a common law claim for conversion. *Id.* at ¶¶ 65–68.

Plaintiffs seek summary judgment as to liability on all of their claims against all of the Defendants, asking that the case be tried only on damages.[2] The Clark County Defendants oppose the Motion in its entirety and reciprocally seek summary judgment on all claims; Defendant Clark has not responded to Plaintiffs' Motion.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157–59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original). Summary judg-

---

1. The parties should note that the Motion for Summary Judgment of Defendants Kelly, Cramblett, Tillman, and Reed has not been referred to the Magistrate Judge and will be decided in the first instance by Judge Rose.

2. Plaintiffs also ask that the case be tried on the issue of attorney fees (Motion, Doc. No. 37, at 1), but the issue of an award of attorney fees to the prevailing party under 42 U.S.C. § 1988 is for the Court's determination after verdict.

ment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.) Fed.R.Civ.P. 50. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate. *Id.* The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992) (quoting *Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 863 (6th Cir.1986)). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than de minimis. *Hartsel v. Keys,* 87 F.3d 795 (6th Cir.1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,*

369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2510.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323, 106 S.Ct. 2548; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir.1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Martin v. Ohio Turnpike Comm'n,* 968 F.2d 606 (6th Cir.1992), *cert. denied,* 506 U.S. 1054, 113 S.Ct. 979, 122 L.Ed.2d 133 (1993).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir.1989), *cert. denied,* 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together

with any affidavits submitted, specifically called to its attention by the parties.

The facts set forth in this Report are admitted or established by evidence competent under Fed.R.Civ.P. 56(e) and not controverted by opposing competent evidence. Having compared the competing statements of fact in the two Motions, the Court concludes that these are effectively true cross-motions for summary judgment in that there are really no contested material facts and few if any contested historical or evidentiary facts. Compare 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2720 (1998), on the situation where parties make cross-motions for summary judgment, but do not concede the facts are truly undisputed from the opposing party's perspective as well as their own.

### Proposed Findings of Fact

The Magistrate Judge recommends the Court find the following facts which are supported by evidence of the quality required by Fed.R.Civ.P. 56(e).

Plaintiff American Powder Coating and Manufacturing, Inc. ("APC"), is an Ohio for-profit corporation all of whose stock is owned by its president, Plaintiff Bobbie Dever. Her husband, Plaintiff Fred Dever, has always run the business, however, and is its vice president. The business is located at 2208 and 2220 South Yellow Springs Street, Springfield, Ohio. Bobbie Dever holds title to the property at the 2208 address; Fred Dever is the title holder for the property at the 2220 address.

According to Mr. Dever's deposition testimony, he hired Defendant Glenn Clark in May, 2004, with the intent of teaching him APC's business so that he could purchase it. In May or June, 2005, Dever and Clark began discussing the sale and eventually agreed that the business would be turned over to Clark on July 1, 2005. As of that date, there was no signed agreement for the sale, but Dever nonetheless turned the operations over to Clark, under Dever's oversight. According to Dever, Clark began to take money from the company and somehow destroyed a company computer program. Negotiations continued through September, 2005, but eventually reached an impasse at which time Dever told Clark to gather his equipment and leave APC. (Clark and his father-in-law were renting space at 2220 West Yellow Spring Street to run a machine shop; it was the machine shop equipment which Dever intended to have Clark remove.)

When Clark and his father-in-law did not leave as requested, Dever called the Clark County Sheriff who declined to intervene without a court resolution of the matter. In late October, 2005, the Devers then sued Clark in the Clark County Common Pleas Court; Clark counterclaimed for injunctive relief. On December 7, 2005, Judge Rastatter of the Common Pleas Court granted Clark preliminary injunctive relief which provided:

1. Plaintiffs [Mr. & Mrs. Dever] are prohibited from interfering with defendants' quiet enjoyment of the subject business and real estate;

2. Plaintiffs provide defendant Glenn Clark with keys to all locks in all buildings located on the subject real estate;

3. Plaintiffs not enter upon the subject real estate until resolution of this case unless express consent is given by Glenn Clark;

4. Plaintiffs cease collection of accounts receivable and turn over to defendants any money collected on invoices issued after July 1, 2005.

(*Dever v. Clark*, Case No.2005–CV–1222,

Entry of December 7, 2005) (the "Entry").[3] Judge Rastatter denied the Devers' request to require Clark to post a bond and for a stay pending appeal. On December 12, 2005, the day before the incident in suit, the Devers' filed an interlocutory appeal in the Clark County Court of Appeals and a request for stay of the preliminary injunction; Mr. Clark and his counsel were aware of that filing. A stay was granted by the Clark County Court of Appeals, but not until December 22, 2005.

Plaintiffs did not surrender the business to Clark pursuant to this Entry and Clark sought the assistance of the Clark County Sheriff's Office to obtain possession. At 5:30 A.M. on December 13, 2005, he called the Sheriff's Office and asked for assistance. Clark met Defendant Sergeant Reed in the parking lot of a nearby business and showed him the Entry. He told Reed he wanted to proceed at that hour of the morning because the business opened at 6:00 A.M., a fact Mr. Dever confirmed at his deposition.[4] Sergeant Reed read the entire Entry; Defendant Deputies Cramblett and Tillman read at least the last page, which contains the portion quoted above. Reed believed the Entry was valid because it bore the judge's signature and a court date stamp. The Common Pleas Court had not issued a writ or order of any kind directing the Sheriff to enforce its preliminary injunction order.

When they reached APC, the Deputies entered through the shop door, which was unlocked; the entrance through which customers enter was still locked. None of the

Plaintiffs invited any of the Defendants onto the property or into the building. Upon reaching the locked office door, they knocked and were admitted by Mr. Dever. Asked what was going on, Sergeant Reed responded that he had the Entry. Mr. Dever then asked them to look at paperwork which would have shown them that the Entry had been appealed. They declined to look at the paperwork and also declined to talk to Mr. Dever's attorney on the telephone.[5] Reed asked Clark if he wanted Dever there and Clark said "no." Thereupon, Sergeant Reed instructed Dever to take his personal property and leave. As Dever and Clark disputed their respective rights to various items, Sergeant Reed apparently became exasperated and said to Dever, "Get your shit and get out." Later, when it seemed to Reed that Dever was not leaving, he threatened Dever with arrest. None of the Deputies drew a sidearm, but Sergeant Reed placed his hand on his weapon when Mr. Dever opened a desk drawer and obtained Mr. Dever's assurance that he did not have a firearm. The Defendant Deputies went nowhere inside the property without Dever and took nothing from the premises. The only items Dever claimed in his deposition that he was not allowed to take with him were all still there when he regained control of the property in January, 2006.

As Dever left his office, Sergeant Reed instructed him not to return to the property. Dever informed Reed that Mr. Hinshaw, an employee, had the keys to the buildings. Dever was escorted to his auto-

---

3. On the Court's Order to Supplement the Record (Doc. No. 57), the parties have filed a Joint Appendix with all or a great deal of the state court record. (Doc. Nos. 58–78) and have stipulated to authenticity (Doc. No. 79).

4. This does not mean the business was open to the public at that hour, but merely that employees began to work at that hour.

5. Defendant Deputy Cramblett stated in an incident report about the events that "Mr. Dever let us in and gave us copies of the appeal he filed on 12–12–2005."

mobile by Deputy Tillman who then followed Dever for some distance to make sure he did not return to the property. The Defendant Deputies delivered possession and control of the property to Clark; they did not take an inventory or give Plaintiffs a receipt for the property turned over.

At some time after December 13, 2005, the Clark County Court of Appeals stayed the preliminary injunction pending appeal and gave Plaintiffs control of the business again *(Dever v. Clark,* Case Nos. 05–CA–0126, 0127, Decision and Entry of December 22, 2005). The stay was subject to the posting by the Devers of a substantial bond which was done and Plaintiffs again took possession of APC. They assert, however, that by that time Mr. Clark had ruined the business.

### Asserted Factual Disputes

Plaintiffs assert that the Clark County Defendants make assertions of fact which are not supported by the record. That allegations reads as follows:

> The statements which Plaintiffs contest are as follows:

> The Sheriff Defendants claim that Mr. and Mrs. Dever and Mr. Clark agreed that Mr. Dever would turn over operation of American Powder Coating and Manufacturing Co., Inc. (the "Company") to Mr. Clark on July 1, 2005. See Sheriff Defendants' Memorandum at p. 1. While the Sheriff Defendants correctly state that Mr. Clark managed the Company under Mr. Dever's supervision, they fail to acknowledge that Mr. and Mrs. Dever retained ownership of both the Company and the Real Estate. See Deposition of Fred Dever at P. 20. Plaintiffs owned, and continue to own, the property which the Sheriff Defendants unlawfully seized from Plaintiffs.

Sheriff Defendants misconstrued the proceedings before the Clark County Court of Common Pleas Court and the Court of Appeals. The Entry issued by the Common Pleas Court was invalid and was lawfully challenged by Plaintiffs. As the Court of Appeals found, and the United States Bankruptcy Court concurred, Plaintiffs were the lawful owners of both the Company and the Real Estate. The Sheriff Defendants took no action to determine the genuineness or validity of the Entry. The Sheriff Defendants relied solely on the representations and demands of their co-Defendant Mr. Clark. The Common Pleas Court Entry was invalid on numerous grounds. The Trial Court Judge refused to define the agreement which he improperly attempted to impute on Plaintiffs. The Trial Court refused to comply with the Ohio Rules of Civil Procedure when the Court failed to require Mr. Clark to post a bond to protect Plaintiffs' economic interests. The invalidity of the Entry and the likelihood of sanctions being levied by the Court of Appeals against Mr. Clark caused Mr. Clark to withdraw his Motion upon which the Entry was based. The withdrawal rendered both the Entry and the then pending appeal moot.

The Sheriff Defendants refused to acknowledge the pending appellate process. Rather than allow the Courts to resolve the controversy, the Sheriff Defendants exceeded their lawful authority and violated Plaintiffs' rights. The Record does not support the Sheriff Defendants' claim that, on December 13, 2005, Mr. Clark "requested the help of the Clark County Sheriff's office to act as peace officers while he gained possession of APC pursuant to the Entry." See Sheriff

Defendants' Memorandum at p. 3. The transcript of the telephone conversation between Mr. Clark and the dispatcher at the Sheriff's office indicated that when the Sheriff Defendants were dispatched to meet Mr. Clark on December 13, 2005, they were requested to "help remove the previous owner." See the Transcript of December 13, 2005 dispatch call at p. 5, a copy of the dispatch call was marked and attached as Exhibit F to Plaintiffs Motion for Partial Summary Judgment. The Sheriff Defendants were dispatched for the purpose of taking an active role in removing Plaintiffs from the property, rather than merely "acting as peace officers while [Mr. Clark] gained possession." Sheriff Defendants' Memorandum at p. 3.

The Sheriff Defendants draw attention to the dispatcher's and Sgt. Reed's statements questioning why Mr. Clark wanted to proceed with gaining possession of Plaintiffs' property at 5:30 a.m. to argue that the Company was open at the time that they unlawfully removed Plaintiffs from the property. See Sheriff Defendants' Memorandum at p. 4. In fact, the Company was not open to the public at the time the Defendants removed Plaintiffs from the property. See Dever Aff. at ¶ 12.

The Sheriff Defendants' state that Sgt. Reed "believed the Entry was valid because it was signed by the Judge and he thinks it contained a stamp from the Court." Sheriff Defendants' Memorandum at pg. 4. The Entry did not contain a stamp. See December 7, 2005 Entry. The Sheriff Defendants did not undertake any action to verify the authenticity or validity of the Entry. The Common Pleas Court did not issue its Entry to the Sheriff. The Sheriff's civil docket did not reflect the Entry. Neither the Common Pleas Court nor the Clerk of Courts were open at the time that the Sheriff Defendants removed Plaintiffs from the property. The Sheriff Defendants did not request that the dispatcher check the CAD system to determine what previous activity had occurred at the property address. The Entry was not delivered to the Sheriff's office for service and did not direct or authorize the Sheriff to take any action. See Reed Transcript at p. 23, 1 22 and p. 24, 1 20.

While the Sheriff Defendants state that each Deputy understood that they were at Plaintiffs' property on December 13, 2005 to keep the peace, their actual actions were inconsistent with, and outside, a limited role of keeping the peace. All of the Sheriff Defendants admitted that there was no disturbance or criminal activity on the Real Estate prior to their unlawful entry. The only forcible activity which occurred on the Real Estate involved the Sheriff Defendants' forcible removal of Plaintiffs and their threat of Plaintiffs with arrest. The Sheriff Defendants disingenuously claim that they informed Mr. Dever that they were present at the Company to keep the peace on December 13, 2005. Sheriff Defendants cite Mr. Dever's deposition to support this statement. Mr. Dever's statement, however, referred not to December 13, 2005 when the Sheriff Defendants forcibly removed him from the Company, but rather to October 2005 when Mr. Dever called the Sheriff seeking the removal of Mr. Clark from the Company. See Dever Transcript at p. 43–44. Even counsel for the Sheriff Defendants acknowledged

the active role of their clients in interfering with Plaintiffs' rights, for the Sheriff defendants' counsel admitted that the Sheriff Defendants threatened Mr. Dever with arrest if he did not follow Sgt. Reed's order to "get [his] shit and get out." See Sheriff Defendants's Memorandum at pgs. 6 and 7.

On December 13, 2005, Plaintiffs lawfully owned and exercised possessory rights over their property. Plaintiffs exercised their possession by having the doors locked. The Sheriff Defendants acknowledge the front door (the public entrance) to the building was locked so they entered the building through a non-public, private part of the property without invitation. Only the Company's employees were authorized to access to the building through the employee entrance. See Dever Aff. at ¶ 12, Reed Transcript, pgs. 68–69. The Sheriff Defendants allege that Mr. Dever "invited them back into his office" to support their proposition that any searches occurred with alleged consent. Sgt. Reed acknowledged that Plaintiffs did not invite the Sheriff Defendants onto the property in his deposition. See Reed Transcript at p. 88, ll 5–10. Mr. Dever, at all times, challenged the Sheriff Defendants' efforts, denied the validity of the State Court Order, and advised the Defendants of the pending appeal. The Sheriff Defendants forced themselves into Mr. Dever's office and then forced Mr. Dever, under threat of arrest, to involuntarily leave. See Dever Aff. at ¶ 13. The Sheriff Defendants allege that Mr. Dever did not show them any paperwork regarding the appeal that was filed. See Sheriff Defendants' Memorandum at p. 6, Footnote 9. This claim is contrary to the Ohio Uniform Incident Report filed by Deputy Cramblett regarding the events that occurred on December 13, 2005. In the report, Deputy Cramblett stated in his narrative that "[u]pon going to the business Mr. Dever let us in and gave us copies of the appeal he filed on 12–12-2005." See Incident Report regarding Incident Number 05–7711.

The Sheriff Defendants' admit that Sgt. Reed repeatedly touched his gun when he ordered Mr. Dever to involuntarily leave the Real Estate. Mr. Dever perceived Sgt. Reed's act of placing his hand upon his gun as a threat. See Affidavit of Fred Dever ("Dever Aff.") at ¶ 14. A copy of Mr. Dever's affidavit was submitted as Exhibit A to Plaintiffs Motion for Partial Summary Judgment. Sgt. Reed admitted in his deposition that he threatened Mr. Dever with arrest if Mr. Dever refused to comply with his orders. See Transcript of Deposition of Sgt. Terry Reed ("Reed Transcript") at p. 84.

(Plaintiffs' Memorandum in Opposition, Doc. No. 55, at 1–6.)

These assertions by Plaintiffs do not create genuine issues of material fact for a number of reasons.

First of all, some of them are not statements of "fact." For example, the claim that the Plaintiffs had valid possessory interests in the property on December 13, 2005, or that Judge Rastatter's Entry was invalid are legal conclusions which are wrong for the reasons given below.

Secondly, in all instances where Plaintiffs' assertions are material, this Report accepts Plaintiffs' version of the facts. For example, the Court credits Mr. Dever's claim that he was threatened with arrest and intimidated by the fact that the Deputies were armed, as well as his con-

clusion that he left the property involuntarily on December 13, 2005.

Third, some of the asserted facts are immaterial, given the analysis below. For example, it is not necessary to decide whether Mr. Dever consented to the Deputies entry on the property or whatever search they conducted because, for reasons set forth below, his consent is immaterial.

Fourth, in at least one instance, the statements are refuted by the documentary evidence, to wit, there is a time stamp on the Entry which shows it was filed on December 7, 2005 (See Doc. No. 51–2. Exhibit A to B.D. Deposition).

To the extent Plaintiffs dispute the Court's conclusion that there are no genuine issues of material fact, they must point out the disputes with specificity in any objections to this Report and support those objections with record citations.

**Plaintiffs' Federal Claims**

■ Plaintiffs bring their federal claims under 42 U.S.C. § 1983, R.S. § 1979, which was adopted as part of the Act of April 20, 1871, and reads, as amended:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable

exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole,* 504 U.S. 158, 112 S.Ct. 1827, 118 L.Ed.2d 504 (1992). In order to be granted relief, a plaintiff must establish that the defendant deprived him of a right secured by the U.S. Constitution and the laws of the United States and that the deprivation occurred under color of state law. *See West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Flagg Brothers Inc. v. Brooks,* 436 U.S. 149, 155, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978).

The Complaint does not state whether the Defendants are sued in their official or individual capacities. Governmental officials may be held personally liable for damages under § 1983 based upon actions taken in their individual capacities. See *Hafer v. Melo,* 502 U.S. 21, 27, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991)(holding state officials sued in their individual capacities are "persons" within the meaning of section 1983). Generally, plaintiffs must designate in which capacity they are suing defendants; if not, by operation of law,

defendants are deemed sued in their official capacities. See *Hardin v. Straub*, 954 F.2d 1193, 1199 (6th Cir.1992); *Wells v. Brown*, 891 F.2d 591, 592–94 (6th Cir. 1989). However, in *Moore v. City of Harriman*, 272 F.3d 769 (6th Cir.2001)(en banc), the court held that "[w]hen a § 1983 plaintiff fails to affirmatively plead capacity in the complaint, we then look to the course of proceedings to determine whether *Wells's* first concern [notice to the defendant as opposed to jurisdiction] has been satisfied."

■ Suing a public official in his official capacity for acts performed within the scope of his authority is equivalent to suing the governmental entity. See *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

Although the Complaint does not designate the capacities in which Defendants are sued, Plaintiffs set forth in their Motion that they are suing Sheriff Kelly in his official capacity and argue that Clark County is thereby made liable (Motion, Doc. No. 37, at 31.) They also argue that the other Defendants are sued in both their official and individual capacities. *Id.* at 1.

■ Defendants make no explicit response to this argument. They argue in both their own Motion and in response to Plaintiffs' Motion that all the "Sheriff Defendants" are entitled to qualified immunity. Of course, the defense of qualified immunity is only available to public officers sued in their individual capacities and not to political subdivisions. *Owen v. City of Independence, Missouri*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

The Plaintiffs have not put forth any facts which would suggest individual capacity liability for Sheriff Kelly. They have not averred that he was personally present or had any involvement in the allegedly unconstitutional acts of the other Defendants except being their ultimate supervisor.

■ A supervisory employee cannot be held liable under § 1983 for the constitutional torts of those he supervises unless it is shown "that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Searcy v. City of Dayton*, 38 F.3d 282 (6th Cir.1994), quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.1984). "... there must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a ... plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Alioto v. City of Shively*, 835 F.2d 1173 (6th Cir.1987). A superior is not liable unless he is "somehow personally at fault by actively participating in, encouraging or directing the commission of illegal acts by his subordinates." *Coffy v. Multi–County Narcotics Bureau*, 600 F.2d 570 (6th Cir.1979); *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Jones v. Denton*, 527 F.Supp. 106 (S.D.Ohio 1981). For example, *respondeat superior* liability is not available in a medical treatment case as to warden and director of department of corrections. *Jones v. Denton*, 527 F.Supp. 106 (S.D.Ohio 1981). A claimed constitutional violation must be based upon active unconstitutional behavior. The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir.2006); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir.2002). The only act of ratification alleged by Plaintiffs is Sheriff Kelly's deposition testimony that the deputies acted in accor-

dance with the manner in which Sheriff's Office business is usually conducted. The Court therefore construes the claims against Sheriff Kelly to be made against him in his official capacity only. On the other hand and particularly given their extended argument in support of their claim of qualified immunity, the Court construes the claims made against the three Deputies as made against them individually.[6] They have certainly received adequate notice that liability is asserted against them in their individual capacities since they have defended on that basis.

The Clark County Defendants do not dispute that all of their actions complained of herein were taken by them under color of law. They do claim the defense of qualified immunity to all of Plaintiffs' claims under 42 U.S.C. § 1983.

■ Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. § 1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Christophel v. Kukulinsky,* 61 F.3d 479, 484 (6th Cir.1995); *Adams v. Metiva,* 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe,* 17 F.3d 162 (6th Cir.1994). The question is not the subjective good or bad faith of the public official, but the "objective legal reasonableness" of his or her action in light of clearly established law at the time the official acted. *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

Qualified immunity analysis involves three inquiries: (i) "whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiffs show that a constitutional violation has occurred;" (ii) "whether the violation involved a clearly established constitutional right of which a reasonable person would have known;" and (iii) "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Radvansky v. City of Olmsted Falls,* 395 F.3d 291, 302 (6th Cir.2005), *quoting Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir.2003). Qualified immunity must be granted if the plaintiff cannot establish each of these elements. *Williams ex rel. Allen v. Cambridge Bd. of Educ.,* 370 F.3d 630, 636 (6th Cir.2004).

In order for the violated right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he or she is doing violates that right; in light of pre-existing law, the unlawfulness of the official's action must be apparent. *Anderson v. Creighton,* 483 U.S. at 640, 107 S.Ct. 3034. The right must be defined at the appropriate level of specificity to determine whether it was clearly established at the time the defendants acted. *Wilson v. Layne,* 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), citing *Anderson v. Creighton.* The test is whether the law was clear in relation to the specific facts confronting the public official when he acted; the constitutional right must not be characterized too broadly without considering the specific facts of the case. *Guercio v. Brody,* 911 F.2d 1179 (6th Cir.1990). The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Russo v. City of Cincinnati,* 953 F.2d 1036, 1042 (6th Cir.

---

**6.** Since the Sheriff is sued in his official capacity, any further analysis of suit against the other Defendants in their official capacities is unnecessary.

1992). Although the very action in question need not have previously been held unlawful, its unlawfulness must be apparent in light of pre-existing law. *Id.* An action's unlawfulness can be apparent from direct holdings, specific examples described as prohibited, or from the general reasoning that a court employs. *Burchett v. Kiefer,* 310 F.3d 937 (6th Cir.2002), citing *Hope v. Pelzer,* 536 U.S. 730, 122 S.Ct. 2508, 2516–17, 153 L.Ed.2d 666 (2002).

■ If officers of reasonable competence could disagree on an issue, immunity should be recognized. *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir.1993); *Gossman v. Allen,* 950 F.2d 338, 341 (6th Cir.1991).

■ District courts are to apply a two-part sequential analysis to the qualified immunity defense. They must first determine whether the alleged facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. The next step is to decide if the right was clearly established. *Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004); *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005); *Klein v. Long,* 275 F.3d 544 (6th Cir.2001), *both citing Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

"A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'" *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), quoting *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). "Deciding the constitutional question before addressing the qualified immu-

nity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson v. Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999), citing *County of Sacramento v. Lewis,* 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). See also *Saucier v. Katz,* 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Siegert v. Gilley,* 500 U.S. 226, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Brennan v. Township of Northville,* 78 F.3d 1152, 1154 (6th Cir.1996); *Jarvis v. Wellman,* 52 F.3d 125 (6th Cir.1995); *Megenity v. Stenger,* 27 F.3d 1120, 1124 (6th Cir. 1994); *Centanni v. Eight Unknown Officers,* 15 F.3d 587 (6th Cir.1994); *Silver v. Franklin Twp.,* 966 F.2d 1031 (6th Cir. 1992).

In determining whether a government employee is shielded from civil liability due to qualified immunity, this court typically employs a two-step analysis: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit,* 408 F.3d 305, 310–11 (6th Cir. 2005) (citing *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)). In addition to the two steps listed above, this court occasionally considers a third step in the qualified immunity analysis. See *id.* at 310 n. 2 ("Panels of this court occasionally employ a three-step qualified immunity analysis, as opposed to the two-step analysis set forth here.... [B]oth the two-step approach and the three-step approach can be said to capture the holding of [*Saucier*].") (citations omitted). When utilized, this third step requires inquiry into "whether the plaintiff offered sufficient evidence to

indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Champion v. Outlook Nashville, Inc.,* 380 F.3d 893, 901 (6th Cir.2004) (citation and quotation marks omitted).

The Supreme Court since *Saucier* has continued to analyze qualified immunity using the two-step approach, but this court has noted that "the three-step approach may in some cases increase the clarity of the proper analysis." *See Estate of Carter,* 408 F.3d at 310 n. 2. If, on the other hand, the case at issue "is one of the many cases where, if the right is clearly established, the conduct at issue would also be objectively unreasonable," then this court has "collapse[d] the second and third prongs" in an effort to "avoid duplicative analysis." *Caudill v. Hollan,* 431 F.3d 900, 911 n. 10 (6th Cir. 2005).

*Hills v. Commonwealth of Kentucky,* 457 F.3d 583 (6th Cir.2006).

The key premise of Plaintiffs' Fourth Amendment claims is that the APC business and the parcels of real estate on which the business sits were their property on December 13, 2005. Thus, the Defendant Deputies are asserted to have entered that property without a warrant, which is certainly true, and also without any order directed to them by the Common Pleas Court, which they also admit. If the APC business had been the property of Fred and Bobbie Dever on December 13, 2005, then the cited authority of *Marshall v. Barlow's, Inc.,* 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978), would have made it improper for them to enter the premises without a warrant or without the consent of Mr. or Mrs. Dever. Similarly, Defendants actions in ordering Mr. Dever to leave the premises, threatening

him with arrest if he did not do so, and placing Mr. Clark in possession would surely constitute a "seizure" if the property were Plaintiffs on December 13, 2005.

Plaintiffs Fourteenth Amendment procedural due process claims also depend on the premise that the APC business and the real estate on which it sat were their property on December 13, 2005. Thus they assert that they had a constitutional right to insist that the Sheriff have a writ issued in compliance with Ohio Revised Code § 311.07 before doing what the Deputies did. They assert that the remedy for violation of a preliminary injunction is limited to contempt and that they had a due process right to be heard on a contempt citation before being dispossessed. Alternatively, they argue they had a right to be heard on appeal from the preliminary injunction before being dispossessed.

Similarly, one of Plaintiffs' substantive due process claims is to a right to privacy in their business property, relying on *New York v. Burger,* 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987), and *O'Connor v. Ortega,* 480 U.S. 709, 107 S.Ct. 1492, 94 L.Ed.2d 714 (1987). They assert that Defendants invaded that privacy by their actions. Finally, Plaintiffs assert substantive due process rights to own property without interference by the State and to engage in contractual relations such as are incident to the conduct of a business. The premise of this claim is again that the APC business and relevant real estate belonged to Plaintiffs on December 13, 2005.

█ The property interests protected from deprivation by the Fourteenth Amendment are in general those property interests created by the States. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). State-created procedural rights that do not guarantee a particular substantive outcome are not protected by the Fourteenth Amend-

ment, even where such procedural rights are mandatory. *Pusey v. City of Youngstown,* 11 F.3d 652, 656 (6th Cir.1993).

■ It is manifest that the property rights with respect to the APC business were in litigation on December 13, 2005, and that the Clark County Common Pleas Court had entered an interlocutory judgment in the case. A federal court must accord to a state court judgment the same effect that judgment would receive in the courts of the issuing State. 28 U.S.C. § 1738, *Marrese v. American Academy of Orthopaedic Surgeons,* 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985); *Migra v. Warren City School District Board of Edn.,* 465 U.S. 75, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Kremer v. Chemical Constr. Corp.,* 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982); *Gutierrez v. Lynch,* 826 F.2d 1534 (6th Cir.1987); *McNasby v. Crown Cork and Seal Co., Inc.,* 888 F.2d 270 (3d Cir.1989).

■ What then was the state of Plaintiffs' property interests in the APC business on December 13, 2005? A court of competent jurisdiction had issued a preliminary injunction on December 7, 2005, which provided, *inter alia,* that:

1. Plaintiffs [Mr. & Mrs. Dever] are prohibited from interfering with defendants' quiet enjoyment of the subject business and real estate;

2. Plaintiffs provide defendant Glenn Clark with keys to all locks in all buildings located on the subject real estate;

3. Plaintiffs not enter upon the subject real estate until resolution of this case unless express consent is given by Glenn Clark; ...

(See citation supra.)

No one seems to question that the Clark County Common Pleas Court had subject matter jurisdiction of the controversy between the parties, that as an equity court it had authority to issue preliminary injunctive relief, that venue of the matter in Clark County was proper, and that the court had personal jurisdiction of the parties. As Plaintiffs allege, Judge Rastatter did not require Clark to post a bond, so the preliminary injunction was effective when issued. Ohio R. Civ. P. 65.

■ The fact that a party has the right to appeal an interlocutory injunction does not render the injunction ineffective pending appeal. Furthermore, the mere filing of a notice of appeal does not by itself suspend the operation of a preliminary injunction under Ohio law. Ohio R. Civ. P. 62(B) provides that a party may obtain a stay of judgment by posting an appropriate supersedeas bond; the negative implication of that Rule is that, in the absence of a bond or a stay granted without bond, the injunction remains effective. Plaintiffs' requests to the Common Pleas Court to stay the order pending appeal or to require Mr. Clark to post a bond were denied. Thus as of December 13, 2005, when Defendant Deputies acted, Judge Rastatter's preliminary injunction was outstanding, had not been stayed by him or the Court of Appeals, and was unaffected by the filing of a notice of appeal.

Nothing further was done by any court with respect to Judge Rastatter's order until December 22, 2005. On that date, the Court of Appeals upheld the issuance of a preliminary injunction, but stayed its effectiveness conditioned upon the Devers posting a substantial bond. Contrary to Plaintiffs' assertion, the Court of Appeals did not reverse the Common Pleas Court. Therefore, as of December 13, 2005, the date of the actions in suit, there was a valid outstanding unstayed order of a court of competent jurisdiction which forbade

Fred Dever from being on the property without Glenn Clark's express consent.

Mr. Dever appears to concede, at least implicitly, that he was in contempt of Judge Rastatter's order because he was on the property without Mr. Clark's consent and had not surrendered the keys to Mr. Clark. He argues:

> Even if one assumes for the sake of argument that the December 7, 2005 Entry was valid, the recourse available under Ohio law was limited to the initiation of contempt proceedings. R.C. 2727.11 provides that preliminary injunctions are to be enforced through the initiation of contempt proceedings. The contempt proceedings would have taken place after the then pending appeal, which Plaintiffs initiated, was concluded. Since Plaintiffs successfully obtained a Stay from the Court of Appeals, Plaintiffs could not have been held in contempt.

(Plaintiffs' Motion, Doc. No. 37, at 23.)[7] Plaintiff misunderstands the law. Once a court of competent jurisdiction has issued a valid order, a person subject to the order has a primary obligation to obey. That primary duty may, if violated, subject the person to contempt sanctions, but whether or not contempt sanctions are ever sought does not affect the primary duty to obey the order. There can be little doubt that Mr. Dever was in contempt of court on December 13, 2005, for continuing to possess the property in defiance of Judge Rastatter's order and in light of the fact that he had not obtained any relief from the order. The fact that he later obtained a stay pending appeal would not have pre-vented Judge Rastatter from holding him in contempt for his actions on December 13, 2005.

Plaintiffs' argument asks this Court to assume the validity of Judge Rastatter's Entry only "for the sake of argument," but has not made any argument as to why it was invalid. Even a voidable injunction must be obeyed under penalty of contempt until it is stayed or set aside. *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *United States Catholic Conference v. Abortion Rights Mobilization,* 487 U.S. 72, 108 S.Ct. 2268, 101 L.Ed.2d 69 (1988). Thus when the Defendant Deputies entered the APC business on December 13, 2005, they were not invading any possessory or privacy interests of the Plaintiffs. Judge Rastatter had declared that Plaintiffs were to surrender their possession of APC to Clark. By being on the property without Clark's consent and failing to turn over the keys until ordered to do so by the Defendant Deputies, Fred Dever was invading Glenn Clark's property rights, recognized by a court of competent jurisdiction and embodied in an injunctive order of that court. The fact that Plaintiffs still held title to the property, or that they recovered their possessory interests at a later date did not give them the right to defy on December 13, 2005, a court order giving possessory rights to someone else.

In addition to the contempt argument, Plaintiffs argue that "Defendants violated Plaintiffs' procedural due process rights to retain their property while exercising their available appellate rights." (Plaintiffs' Motion, Doc. No. 37, at 23.) Again, it is state law which determines what property

---

7. Actually, Ohio Revised Code § 2727.11 provides that "An injunction or restraining order granted by a judge **may** be enforced as the act of the court, and disobedience thereof may be punished by the court, or by a judge who granted it in vacation, as a contempt." This statute was carried over to the Revised Code from the General Code and its continued vitality in light of the Modern Courts Amendment and adoption of the Civil and Appellate Rules is doubtful.

rights are protected by procedural due process. Plaintiffs did not have the right to retain possession of their property pending appeal in the absence of a stay of Judge Rastatter's injunction. As of December 13, 2005, there was no such stay. Defendants did nothing to interfere with Plaintiffs' due process rights to appeal. The fact, as Plaintiffs put it, that the Defendant Deputies "refused to acknowledge the pending matters before the Clark County Court of Appeals" (*Id.*, at 23–24) is immaterial; the mere pendency of the appeal did not stop the preliminary injunction from being effective.

Plaintiffs discuss the law relating to whether there are adequate state remedies for unauthorized and random acts of public officials. *Id.* at 24. This discussion is really not needed because, as Sheriff Kelly acknowledged at his deposition, these acts were pursuant to the custom or policy of the Sheriff's Department. Even if they contravened General Orders adopted by Sheriff Kelly or his predecessor in office,[8] that would not prevent them from being custom or policy of the Department when so acknowledged by the Sheriff. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). The Sheriff is unquestionably the highest policy-making official in the Sheriff's Department and he acknowledges that the Defendant Deputies acted in accordance with his policy. Thus if they acted unconstitutionally, Clark County would be liable. *Pembaur, supra; Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

A substantial portion of Plaintiffs' argument depends on their assertion that the Defendant Deputies acted *ultra vires*, beyond the authority conferred on them by Ohio Revised Code § 311.07 which, they say, "required that a writ or Order be issued and directed to the Sheriff." (Plaintiffs' Motion, Doc. No. 37, at 23.) That is not what Ohio Revised Code § 311.07 says; rather, it provides in pertinent part:

> (A) Each sheriff shall preserve the public peace and cause all persons guilty of any breach of the peace, within the sheriff's knowledge or view, to enter into recognizance with sureties to keep the peace and appear at the succeeding term of the court of common pleas, and the sheriff shall commit such persons to jail in case they refuse to do so. The sheriff shall return a transcript of all the sheriff's proceedings with the recognizance so taken to such court. The sheriff shall, except as provided in division (C) of this section, execute all warrants, writs, and other process directed to the sheriff by any proper and lawful authority of this state, and those issued by a proper and lawful authority of any other state.

The fact that the Sheriff has a duty to execute writs and orders directed to him does not imply that he has no authority to act without such a direct order. Hypothetically, suppose that a person were seated in his living room watching television and an inebriated person from a nearby bar sits down on the porch furniture outside the person's window and proceeds to fall asleep there. It certainly is not the law that the homeowner must, before obtaining the assistance of the sheriff or other law enforcement authority, go to court and get a writ to have the person

---

**8.** General Order 74.2, a copy of which is attached to Plaintiffs' Motion as part of Exhibit E, describes how service of various civil orders is to be made; it does not purport to state a limitation on the involvement of deputies in civil matters.

removed. Rather, it would be well within what citizens normally expect of law enforcement for a deputy sheriff to rouse the person and tell them to move along under threat of arrest for trespass.[9] In their depositions, the Defendant Deputies asserted that their actions here were akin to enforcement of a child custody order which is an analogous situation.

Plaintiffs rely on two cases which appear close on initial reading, but in the final analysis inapposite.

In *Specht v. Jensen*, 832 F.2d 1516 (10th Cir.1987), several police officers entered and searched plaintiffs' home and office without a search warrant to enforce a civil "court order of possession and writ of assistance that directed any sheriff to assist Jacobs in obtaining the computer." *Id.* at 1519. Liability turned entirely on the absence of a search warrant for either location, coupled with plaintiffs' uncontested property interests in the two properties. *Specht* appears to be a straightforward application of the Fourth Amendment's warrant requirement. See *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). That the APC location is not a home does not, of course, exempt it from the search warrant requirement, but the warrant requirement protects the Fourth Amendment rights of persons who have a right to be in the place searched; Mr. Dever had no such right on December 13, 2005.

In *Thomas v. Cohen*, 304 F.3d 563 (6th Cir.2002), plaintiffs were residents of Augusta House, a transitional shelter for women. For purposes of appeal from denial of the defendant police officer's qualified immunity claim, it was conceded that plaintiffs were "tenants" under Kentucky law, which the court found prohibits self-help evictions, i.e., evictions without a court order in a forcible detainer action. Without any court order, the defendant officers assisted the Augusta House manager in evicting the plaintiffs for alleged violations of the Augusta House rules. The court noted the point made above that "property interests are not created by the Constitution ... Instead they are 'created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law....'" *Id.* at 576, citing *Cleveland v. Bd. of Educ. of Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), and *Bd. of Regents v. Roth*, 408 U.S. 564, 570–71, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Relying on *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984), and *Soldal v. Cook County, Illinois*, 506 U.S. 56, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), it held that the evictions of the plaintiffs from their tenancies without any court order but merely on the say-so of the house manager was actionable under § 1983. The distinctions from this case are clear: Mr. Dever did not have a tenancy interest in the APC properties (i.e., he did not live there) and he had received pre-deprivation due process in the Clark County Common Pleas Court before the preliminary injunction was issued. Mr. Dever's presumed response that he had a higher property interest than a mere tenancy because he was the title holder for the property is refuted by the logic of *Thomas:* the manager of Augusta House was the designated agent of the titleholder, but the court held the tenancy interest trumped her directions to the police.

Finally, Plaintiffs argue that Defendant Deputies interfered with their substantive Fourteenth Amendment Due Process

---

9. The inebriation is an unessential element of the hypothetical, offered merely to explain why a person might sit down uninvited on someone else's porch furniture.

rights to own property and engage in contractual relations. What has been said so far suffices to show it was the Common Pleas Court which "interfered" with those rights by entering the preliminary injunction order. There is no Fourteenth Amendment Due Process right, procedural or substantive, to defy the direct order of a court of competent jurisdiction, which is what Mr. Dever was doing on the morning of December 13, 2005.

Defendants argue at some length in their Motion that Plaintiffs' claim of unconstitutional taking under the Fifth and Fourteenth Amendments is not ripe. Plaintiffs confirm in their Memorandum in Opposition that no takings claim is asserted in this case. The facts, construed most strongly in favor of Plaintiffs, would not support a takings claim in any event, since no property was "taken" by the State.

Construing the facts most strongly in Plaintiffs' favor, the Defendants did not deprive them of any constitutional rights by their acts on the morning of December 13, 2005. Even thought the Deputies acted pursuant to a policy or custom of the Sheriff, that policy did not cause any deprivation of constitutional rights. Therefore Clark County is not liable under 42 U.S.C. § 1983. *A fortiori*, no such constitutional rights were clearly established on that date and the Defendant Deputies are entitled to qualified immunity from any § 1983 liability for their acts.

## State Law Claims

Counts Five and Six of the Complaint purport to state claims for relief for common law trespass and conversion. This Court has subject matter jurisdiction over such claims under 28 U.S.C. § 1367 because they plainly are part of the same case or controversy as the Plaintiffs' § 1983 claims.

The parties argue at some length the question whether Defendants are immune under Ohio Revised Code Chapter § 2744 and whether that statute might be unconstitutional under the Ohio Constitution. This Court need not reach those questions. Here as with the federal claims Plaintiffs' case is premised entirely on the notion that the APC business and underlying real estate were their property on December 13, 2005, and that Defendants converted it. The analysis above shows that on December 13, 2005, Plaintiffs had no possessory interest in either the real estate or the personal property of the business. Mr. Dever was allowed to remove any undisputed personal property from the premises; the personal (as opposed to business) items he did not take were still there when he reacquired control of the business in January, 2006. The facts construed most strongly in Plaintiffs' favor will not support trespass or conversion claims. It cannot be stated often enough that it was Fred Dever who was trespassing on December 13, 2005, in open defiance of Judge Rastatter's order.

## Defendant Glenn Clark

While Defendant Glenn Clark has not defended against Plaintiffs' Motion for Summary Judgment, failure to defend is not a basis for granting a motion "which would result directly in entry of final judgment...." S.D. Ohio Civ. R. 7.2(a)(2). While the Court has previously agreed that Mr. Clark might possibly be held liable as a state actor in this case because of acting in concert with the other Defendants (See Doc. No. 27), he cannot be held liable at all, based on the analysis set forth above. To put it another way, he did nothing beyond what he did in concert with the Defendant Deputies and they acted lawfully.

## Conclusion

The Court should enter judgment granting the Clark County Defendants' Motion for Summary Judgment and denying Plaintiffs' Motion for Partial Summary Judgment. The claims against Mr. Clark should also be dismissed with prejudice. January 22, 2008.

## SUPPLEMENTAL REPORT AND RECOMMENDATIONS

MICHAEL R. MERZ, United States Chief Magistrate Judge.

This case is before the Court on Plaintiffs' Objections (Doc. No. 82) to the Magistrate Judge's Report and Recommendations (the "Report," Doc. No. 81) recommending that Plaintiffs' claims be dismissed with prejudice. The General Order of Reference for the Dayton location of court permits a magistrate judge to reconsider decisions or reports and recommendations when objections are filed.

The Magistrate Judge's conclusion that Defendants did not violate Plaintiffs' constitutional or common law property rights depended on the legal conclusion that Plaintiffs had no possessory rights to the property in question on December 13, 2005, the date the Clark County Sheriff Defendants compelled them to leave the property. That is to say, in their Objections Plaintiffs again effectively concede there are no genuine issues of material fact and the question of which party should prevail is a question of law.

The Report concluded that a federal court must accord to a state court judgment the same effect that judgment would receive in the courts of the issuing State. (Report, Doc. No. 81, at 20, citing 28 U.S.C. § 1738 and numerous cases). Plaintiffs agree this is a correct proposition of law (Objections, Doc. No. 82, at 4–5), but insist that under Ohio law, Judge Rastatter's preliminary injunction Entry of December 7, 2005, (the "Entry") was invalid. Plaintiffs' arguments for invalidity are considered seriatim below.

### The Date Stamp Issue

First of all, Plaintiffs had argued the Entry was invalid because it did not contain a court stamp (Plaintiffs' Memorandum in Opposition, Doc. No. 55, quoted in Report, Doc. No. 82, at 10). Defendant Reed had testified that he considered the Entry valid in part because it did have a stamp. The Report found that the Entry did have a stamp. Indeed, the copy of the Entry attached as Exhibit A to the Objections plainly shows that the Entry was file stamped at 8:14 A.M. on December 7, 2005, by the Clark County Clerk of Courts.

Plaintiffs now argue in their Objections "the Entry did not bear a 'stamp from the Court,'" but rather "[t]he Entry contained a time stamp which was placed on the Entry by the Clerk subsequent to the Judge's signature." (Objections, Doc. No. 82, at 3.) But that is exactly what one accustomed to dealing with court orders in Ohio would expect. Under Ohio R. Civ. P. 58, having signed a judgment, a judge is required to file it with the Clerk for journalization. Being a court of record, the Common Pleas Court "speaks through its journal." Thus one would expect an experienced deputy sheriff to question a purported court order which had not been time stamped by the Clerk of Courts. To the extent it is material, the Magistrate Judge adopts the more precise finding suggested by the Objections that the time stamp was placed on the Entry by the Clerk (probably a deputy clerk), but that finding favors Defendants, not Plaintiffs. In other words, it proves that the Entry had been properly filed with the Clerk for journalization.

## The Bond Issue

Plaintiffs next argue that the preliminary injunction Entry was ineffective because, "under Ohio law, a preliminary injunction is inoperative until the court journalizes the amount of bond, if any, which would be required," citing *Skiles v. Bellevue Hospital,* 2006 Ohio 5361, 2006 WL 2925350, 2006 Ohio App. LEXIS 5332 (Ohio App. 6th Dist. Oct. 13, 2006)(Objections, Doc. No. 82, at 5). The *Skiles* case was an appeal from a finding that appellant was in contempt for violating a preliminary injunction order. The court held:

> One cannot be held in contempt for violating a preliminary injunction unless the order has been made operative by posting a bond in an amount fixed by the court. *North Electric Co. v. United Steelworkers of America* (1971), 28 Ohio App.2d 253, 257–258, 277 N.E.2d 59. The issuing court does, however, have the option to set bond at a nominal amount or at zero. *Vanguard Transp. v. Edwards Transfer* (1996), 109 Ohio App.3d 786, 793, 673 N.E.2d 182, adopting the reasoning of *Colquett v. Byrd* (1979), 59 Ohio Misc. 45, 392 N.E.2d 1328. Notwithstanding this exception, the court's determination of how much bond, if any, is required must be made manifest through journalization of the order. *North Electric Co.,* supra, at 256. Oral pronouncements are insufficient. *Id.*

2006 Ohio 5361 at ¶ 18, 2006 WL 2925350. Plaintiffs now assert that because Judge Rastatter did not journalize his decision not to require a bond, "the Entry was not effective." (Objections, Doc. No. 82, at 5.) However, the state court record plainly establishes that Judge Rastatter did journalize his decision to deny a bond. The relevant entry was filed with the Clerk on December 9, 2005, and has been filed with this Court (See Exhibit A–19 to Doc. No. 59). In doing so, he cited the *Colquett* and *Vanguard* cases relied on by the *Skiles* court for the proposition that a trial court has discretion to set the bond at zero or a nominal amount.

Thus the Entry was not ineffective under Ohio law for failure to journalize a bond amount.

## The Inappropriate Remedy Issue

Plaintiffs' third argument is

> The Entry, as written, inappropriately purports to dispossess Plaintiffs of their real and personal property and relinquishes control to Mr. Clark. Ohio Courts have repeatedly held that extraordinary remedies such as restraining orders and preliminary injunctions may not be used to dispossess individuals from real or personal property. See *Fodor v. First National Supermarkets* (1992) 63 Ohio St.3d 489, 589 N.E.2d 17, *Langenderfer v. Dangler* (1940) 65 Ohio App. 528, 31 N.E.2d 175, *Snelling & Snelling, Inc. v. ARICO* (1993) 83 Ohio App.3d 89, 613 N.E.2d 1107.

(Objections, Doc. No. 82, at 6.)

In *Fodor,* the Ohio Supreme Court held in the syllabus

> In an action seeking repossession of property, an injunction directing the return of such property may not be issued when the right to possession may be determined by an action in forcible entry and detainer and the complaining party has failed to pursue such action.

63 Ohio St.3d 489, 589 N.E.2d 17.

In *Langenderfer,* the owner of land brought an ejectment action against the possessor of the land who claimed a right to possession under an oral lease. The trial court appointed receiver pending the outcome of the litigation. The Court of Appeals reversed, holding

Neither an injunction will be allowed nor a receiver appointed to dispossess one in possession of property under claim of right as in the instant case and, where appropriate, the remedy of injunction should be applied, its sole purpose being to preserve the subject-matter of the controversy and not to take property from the possession of one party and put it in that of another. *Gray, Atty. Genl., v. Council of Newark,* 9 Del.Ch., 171, 79 A., 735 [(1911)]; *Columbus Packing Co. v. State, ex rel. Schlesinger, Pros. Atty.,* 106 Ohio St., 469, 480, 140 N.E., 376, 37 A.L.R., 1525 [(1922)].

*Langenderfer v. Dangler,* 65 Ohio App. 528, 532, 31 N.E.2d 175 (Ohio App. 6th Dist.1940).

Thus *Fodor* and *Langenderfer*[1] support Plaintiffs' position that Judge Rastatter should not have issued the preliminary injunction, but should have awaited trial on the merits. They do **not,** however, support Plaintiffs' claim that the Entry was ineffective. That is, nothing in those opinions suggest that the trial court's orders were invalid, such that violation of them would not support a contempt conviction. Rather, they were inappropriate remedies, subject to reversal on appeal, as indeed they were reversed.

■ This distinction is critical to the instant case. One of the most important contempt cases in American jurisprudence in the last fifty years turns on it. Dr. Martin Luther King, Jr., wrote his famous Letter from the Birmingham Jail while he was serving a sentence for contempt of court. The court order he violated was itself probably issued in violation of the Fourteenth Amendment, but it was voidable, not void, and the Supreme Court up-held the contempt conviction. In that case, *Walker v. City of Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967), the Supreme Court held:

An injunction duly issuing out of a court of general jurisdiction with equity powers upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.

*Id.* at 314, 87 S.Ct. 1824, quoting *Howat v. Kansas,* 258 U.S. 181, 189–90, 42 S.Ct. 277, 66 L.Ed. 550 (1922). The same principles are applicable to this case. The Clark County Common Pleas Court is unquestionably an equity court of general jurisdiction which had personal jurisdiction of the parties. Therefore, Plaintiffs' remedy was by way of appeal to the Clark County Court of Appeals if they believed the preliminary injunction was inappropriate. A party who acts on his or her belief that a remedy ordered by a court is "inappropriate" is in contempt of court.

Plaintiffs assert that the "Entry was invalid. The invalidity of the Entry was confirmed through the appellate proceedings." (Objections, Doc. No. 82, at 10.) Plaintiffs offer no record reference for this assertion. In its Decision and Entry of December 22, 2005, the Court of Appeals

---

**1.** In *Snelling,* the court held a temporary restraining order was not appropriate where a replevin action was available. Thus *Snelling* is inapposite here.

did **not** find the preliminary injunction invalid nor did it vacate the injunction as an inappropriate remedy. Instead, it left the preliminary injunction in place, but ordered it stayed pending appeal provided Plaintiffs filed a bond (Decision and Entry, Ex. B–10 to Doc. No. 67). On April 3, 2006, it remanded the case to the Common Pleas Court on Defendant Clark's motion to withdraw his request for preliminary injunctive relief. *Id.* at Ex. B–27. On July 14, 2006, it dismissed the appeal as moot. *Id.* at B–32. None of these decisions contains even a hint that the Court of Appeals regarded the preliminary injunction as invalid; each of them treats it as a valid and subsisting court order until it was vacated by the Common Pleas Court on Defendant Clark's motion.

### Conclusion

Plaintiffs' Objections are not well taken. It is therefore again respectfully recommended that the Court enter judgment dismissing the Complaint with prejudice. February 9, 2008.